**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 3:08-cv-807-M |
| v. | § § | |
| 7-ELEVEN, INC., | § § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Defendant 7-Eleven, Inc.'s Motion for Leave to Join Responsible Third Party [Docket Entry #27].  For the following reasons, the Motion is **DENIED**.

*Background*

Plaintiff American International Specialty Lines Insurance Company ("AISLIC") filed this suit against 7-Eleven, Inc. ("7-Eleven") on May 12, 2008.  AISLIC claims petroleum hydrocarbons leaked out of storage containers located under a 7-Eleven store, forming a "plume" that seeped into the soil and groundwater under an adjacent Diamond Shamrock gas station, the owners of which are insured by AISLIC.  Under the direction of the Texas Commission on Environmental Quality ("TCEQ"), AISLIC, as indemnitor of the Diamond Shamrock property owner, was required to investigate and clean up the contamination.  In this case, AISLIC seeks to recover from 7-Eleven costs it incurred during that effort.[1]  On June 5, 2009, 7-Eleven filed a motion seeking leave to file a third party complaint against Albertson's, LLC ("Albertson's").  7-

---

[1] The Texas Solid Waste Disposal Act, Tex. Health & Safety Code § 361.344 provides that "[a] person who conducts a removal or remedial action that is approved by the [TCEQ] and is necessary to address a release or threatened release may bring suit in a district court to recover the reasonable and necessary costs of that action and other costs as the court, in its discretion, considers reasonable."

Eleven claims that a separate plume of petroleum and petroleum hydrocarbons formed under a

nearby Albertson's Express store, which contributed to the contamination of the Diamond

Shamrock property, thereby increasing the remediation costs AISLIC now seeks to recover from

7-Eleven.  7-Eleven's proposed third party complaint seeks to hold Albertson's liable for any

remediation costs associated with Albertson's role.  AISLIC opposes the Motion, arguing that it

is futile and untimely, and that the addition of Albertson's would prejudice its efforts in

preparing for trial.

*Legal Standard*

A third party complaint may be filed against those who may be at least partially liable for

the plaintiff's claims against the defendant.[2]  Where, as here, a defendant seeks to file a third

party complaint more than ten days after serving its answer, it must obtain leave of court to do

so,[3] and the court is given "wide discretion" when deciding whether to allow a third party

complaint.[4]  District courts considering whether to grant leave have considered factors such as

possible prejudice to the other parties, undue delay by the third party plaintiff, and whether

allowing the third party complaint would further the goals of Rule 14, by eliminating duplicative

suits and promoting judicial economy.[5]

There is little case law in the Fifth Circuit which examines what factors are properly

considered when deciding whether to permit a third party complaint.  In *Bell v. Bolivar County*,

an unpublished, *per curiam* opinion, the Fifth Circuit affirmed a district court's denial of leave to

---

[2] *McCain v. Clearview Dodge Sales, Inc.*, 574 F.2d 848, 849-50 (5th Cir. 1978) ("[A] third party complaint is not proper under Rule 14 if the defendant cannot show a basis for the third party defendant's liability to the defendant.")
[3] Fed. R. Civ. P. 14(a)(1).
[4] *McDonald v. Union Carbide Corp.*, 734 F.2d 182, 183 (5th Cir. 1984) (quoting *Southern Railway Co. v. Fox.*, 339 F.2d 560, 563 (5th Cir. 1964)).
[5] *See Briones v. Smith Dairy Queens, Ltd.*, No. V-08-48, 2008 WL 4200931, at *2 (S.D. Tex. Sept. 9, 2008) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1443 at 300-11 (2d ed.1990).  *See also Reynolds v. Eveready Marine, Inc.*, No. Civ.A 02-3062, 2003 WL 21088095 (E.D. La. May 7, 2003).

allow a third party complaint, because the filing would prejudice the plaintiff by delaying the case, and the defendant was not prejudiced because it could file its claims against the third party in a separate proceeding.[6]

*Analysis*

## I.      Whether Albertson's is Potentially Liable to 7-Eleven

The Court first addresses whether Albertson's is potentially liable to 7-Eleven for the claims asserted by AISLIC.  AISLIC argues that the TCEQ has determined that AISLIC is not responsible for remediating contamination on the Diamond Shamrock site caused by the Albertson's plume, and therefore, AISLIC has not incurred costs for such remediation.

AISLIC's position is based on the following facts.  An October 31, 2007, report was authored by Titan Engineering, an environmental consulting firm hired to investigate contamination of the Diamond Shamrock site, and sent to the TCEQ ("the Titan Report"), and it informed the TCEQ that the Diamond Shamrock site was apparently also being contaminated, by leakage from the Albertson's property.  On December 10, 2007, the TCEQ responded to the Titan Report, stating that "[n]o further delineation [of the Alberton's contamination] will be necessary.  The TCEQ will request further investigation from the Albertson's facility."  Bart Gaskill, AISLIC's environmental consultant, testified that his firm identified Albertson's as a separate source of groundwater contamination on the Diamond Shamrock site and originally planned to clean up that contamination; however, once TCEQ was informed that Albertson's was the second source of pollution, TCEQ stated that Diamond Shamrock's owners were not responsible for cleaning up the Albertson's contamination, and therefore, no new cleanup costs for any Albertson's contamination were thereafter incurred by AISLIC.  As of May 12, 2009, when Plaintiff's expert, Steve Larson, was deposed, Larson had not attempted to determine

---

[6] 24 F.3d 240, 1994 WL 243455, at *2 (5th Cir. 1994) (per curiam) (unpublished).

whether there had been a comingling of the Albertson's and 7-Eleven plumes.

7-Eleven asserts that although the TCEQ relieved AISLIC of further responsibility for remediation of contamination resulting from the Albertson's plume, AISLIC has not addressed Albertson's responsibility for all or part of AISLIC's costs incurred during past efforts to remediate the Diamond Shamrock site, costs which AISLIC now seeks to recover from 7-Eleven.

The proposed third party complaint seeks to hold Albertson's liable for the portion of the remediation costs caused by Albertson's.  AISLIC seeks from 7-Eleven reimbursement for both past and future costs associated with the cleanup of the Diamond Shamrock site.  As Albertson's is potentially liable for at least some of these costs, it would be properly joined as a third party defendant, if a request for such had been made in accordance with the timing established by the Court's Scheduling Order of September 22, 2008, which required that Motions to Join be filed by November 14, 2008.

## II.    Leave to Amend

### 1)  Timing

7-Eleven argues that leave should be granted because it only recently learned the "full extent of the facts" associated with the Albertson's plume and how the Albertson's plume affected the Diamond Shamrock site.  It cites the May 7, 2009, Gaskill deposition as "specifically confirming" that the Albertson's plume contaminated the Diamond Shamrock site, and that Gaskill discussed the Titan Report and its reference to Albertson's possible involvement.

AISLIC's position is that the Motion is untimely.  In response to 7-Eleven's argument that it did not know about the facts underlying Albertson's involvement until recently, AISLIC states that on September 28, 2007, AISLIC's counsel sent 7-Eleven's counsel a copy of the

Affected Property Assessment Report for the Diamond Shamrock site, which identifies Albertson's as a potential off-site source of the Diamond Shamrock contamination.[7]  Similarly, on November 27, 2007, AISLIC's counsel sent a letter to 7-Eleven's counsel, attaching a copy of a letter Titan sent to TCEQ, identifying Albertson's as a source of contamination.  AISLIC argues that these facts establish that 7-Eleven had notice of Albertson's possible involvement since the fall of 2007.

AISLIC further argues that 7-Eleven and its environmental consultants were aware that the TCEQ documents demonstrating Albertson's connection with the contamination were a matter of public record and available at any time, but that 7-Eleven apparently did not request them.  AISLIC argues that once this suit was filed, 7-Eleven had a duty to investigate the possibility that other parties were responsible for the contamination, but did not do so.  AISLIC also argues that 7-Eleven has failed to vigorously pursue Albertson's possible liability even after it learned of Albertson's involvement.  Larson, 7-Eleven's expert, reported that he had reviewed the site's Affected Property Assessment Report, but he acknowledged during his deposition that he had neither attempted to determine whether the two plumes were comingled, nor tried to separate Albertson's part in the contamination from 7-Eleven's.  AISLIC further notes that 7-Eleven did not serve discovery requests on AISLIC until April 7, 2009, thereby delaying its ability to use the discovery to find other responsible parties.  Although the parties apparently had an agreement not to serve formal discovery requests until March 30, 2009,[8] 7-Eleven is responsible for the effects of its decision to delay discovery on its ability to add parties after the date set in the Scheduling Order.

---

[7] Response App. at 3.
[8] 7-Eleven does not submit proof of this agreement, but the Court assumes this representation by counsel to be accurate.

2) <u>Prejudice</u>

AISLIC also argues it would be prejudiced by the joinder of Albertson's at this time, because the parties have already conducted discovery, hired experts, and filed motions for summary judgment. The addition of Albertson's would force both sides to seek leave to conduct additional discovery and would likely require both parties to amend their expert reports, and perhaps to seek new grounds for summary judgment.

7-Eleven argues that AISLIC would not be prejudiced by the filing of the third party complaint because the trial is now set for December 7, 2009, and that the purposes of Rule 14 and the interests of judicial economy would be served by allowing the addition of factually-related claims.

*Analysis*

The Court denies the Motion for Leave for several reasons. First, it is untimely. 7-Eleven knew, or should have known, of Albertson's potential liability in late 2007, when it was provided the Affected Property Assessment Report, and additionally when it received the November 26, 2007 letter from Titan to TCEQ. Further, all of TCEQ's files relating to the Diamond Shamrock site are available to the public, and a review of those documents would indicate that Albertson's is a potential source of contamination. 7-Eleven did not act expeditiously in pursuing these issues, even after it retained an expert.

Second, AISLIC would be prejudiced if the Court were to join Albertson's as a third party defendant, likely resulting in it engaging in new discovery and amending pleadings, all of which would increase AISLIC's costs, and prejudice its efforts to prepare for trial of this case. Further, 7-Eleven has not even argued, much less demonstrated, that it could not pursue Albertson's at a later time, so the prejudice to it resulting from a denial of its Motion is modest at

best.  Finally, the interests of judicial economy are not significantly advanced by the addition of

Albertson's as a third party defendant at this late hour.

*Conclusion*

The Motion for Leave to Join Albertson's is **DENIED**.  AISLIC's Motion to Strike 7-

Eleven's Reply Appendix [Docket Entry #56] is **DENIED AS MOOT**.

**SO ORDERED**.

August 7, 2009.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**