UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § | CIVIL ACTION No. 3:08-cv-807-M |
| v. | § § § | |
| 7-ELEVEN, INC., | § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion for Partial Summary Judgment [Docket Entry #30] and Defendant's Motion for Partial Summary Judgment [Docket Entry #34]. For the reasons stated below, Plaintiff's Motion for Partial Summary Judgment is **DENIED** in part and **GRANTED** in part. Defendant's Motion for Partial Summary Judgment is **DENIED**.

*Background*

Plaintiff American International Specialty Lines Insurance Company ("AISLIC") filed this suit against 7-Eleven, Inc. on May 12, 2008, alleging that gasoline leakage from a gasoline service station operated by 7-Eleven harmed adjacent real property, the owners of which are insured by AISLIC. AISLIC claims that gasoline leaked out of underground storage tanks under the 7-Eleven station, forming a plume of petroleum hydrocarbons that seeped into the soil and groundwater under the adjacent property. Under the direction of the Texas Commission on Environmental Quality ("TCEQ"), AISLIC was required to investigate and clean up the contamination under the property of its insured.

The 7-Eleven station is located at 501 Boyd Road, Azle, Texas (the "7-Eleven station").

The adjacent property at 500 Boyd Road, Azle, Texas (the "500 Property"), was formerly a Diamond Shamrock gasoline service station.

AISLIC seeks the following relief: (1) an injunction under Section 7002(a)(1)(B) of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.,* (hereafter "RCRA") requiring 7-Eleven to investigate and remediate the petroleum hydrocarbons on, under, and about the 500 Property; (2) reimbursement of AISLIC's investigation and remediation costs, pursuant to the Texas Solid Waste Disposal Act, Tex. Health & Safety Code Ann. § 361.444 (hereafter "SWDA"); and (3) a declaratory judgment establishing 7-Eleven's liability for AISLIC's past and future costs for cleanup at the 500 Property.

AISLIC seeks summary judgment on its RCRA and SWDA claims and on 7-Eleven's affirmative defense that AISLIC "made insufficient and dilatory efforts to take appropriate and cost-effective response measures for conditions at the 500 Property." 7-Eleven seeks summary judgment on AISLIC's RCRA claim, for the reason that there is no imminent and substantial endangerment to human health or the environment.

*Summary Judgment Standard*

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact.[1] "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."[2] Once the movant carries its initial burden, the burden

---

[1] *See* Fed. R. Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).
[2] *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25).

shifts to the nonmovant to show that summary judgment is inappropriate.[3]

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact.[4] In determining whether genuine issues of material fact exist, factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists.[5] A district court properly grants summary judgment if, when viewing the facts in the light most favorable to the nonmovant, the movant shows that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law.[6]

*Analysis*

I. Injunctive Relief under RCRA

A. Legal Standard

Section 6972(a)(1)(B) of RCRA, commonly referred to as the citizen suit provision, allows a plaintiff to act as a private attorney general.[7] An action under RCRA cannot be commenced until ninety days after a plaintiff has given notice to the Administrator of the Environmental Protection Agency, the state in which the alleged endangerment may occur, and any person alleged to have contributed to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste.[8] A plaintiff must establish the following elements to bring a citizen suit under RCRA:

> 1. The defendant is a person, including, but not limited to, one who was or is a generator of solid or hazardous waste, or one who was or is an owner or operator of a solid or hazardous waste treatment, storage or disposal facility;

---

[3] *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).
[4] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[5] *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); *see also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).
[6] Fed. R. Civ. P. 56(c).
[7] 42 U.S.C. § 6972(a)(1)(B). *See Consolidated Companies, Inc. v. Union Pac. R.R. Co.*, 499 F.3d 382, 387 (5th Cir. 2007) (citing *Prisco v. A&D Carting Corp.*, 168 F.3d 593 (2d. Cir. 1999)).
[8] 42 U.S.C. § 6972(b)(2)(A).

2. The defendant has contributed to, or is contributing to, the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and

3. The solid or hazardous waste may present an imminent and substantial endangerment to human health or the environment.[9]

Section 6972(a)(1)(B) provides for injunctive relief based on either past or present conduct.[10]  The continued presence of waste previously disposed of is actionable if it presents an imminent and substantial endangerment to health or the environment.[11]  Waste that no longer presents a threat is not actionable under this provision of RCRA.[12]  An endangerment is "imminent" if it "threatens to occur immediately."[13]  Imminence applies to "the nature of the threat rather than identification of the time when endangerment initially arose.  The section, therefore, may be used for events which took place at some time in the past but which continue to present a threat to the public health or the environment."[14]  An endangerment is "substantial" if it is "serious."[15]  The Court thus must determine whether the condition posed a substantial danger on May 12, 2008, when this suit was filed.[16]

B.  Discussion

Plaintiff provided timely notice before filing suit.  The cross-motions for summary judgment dispute whether contamination at the 500 Property presented an imminent and substantial endangerment to human health or the environment.  Defendant cites several reports

---

[9] *See id.* (citing 42 U.S.C. § 6972(a)(1)(B)).
[10] *See Cox v. City of Dallas, Texas*, 256 F.3d 281, 298 (5th Cir. 2001).
[11] *Id.*
[12] *Id.* at 299.  *See also Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 487-88 (1996) (holding that RCRA does not authorize a private cause of action to recover the prior cost of cleaning up waste that does not, at the time of suit, continue to pose an endangerment to health or the environment).
[13] *Id.* (citing *Meghrig*, 516 U.S. at 489).
[14] *Id.* (quoting H.R. COMM. PRINT NO. 96-IFC 31, at 32 (1979)).  *See also Meghrig*, 516 U.S. at 486 ("It follows that § 6972(a) was designed to provide a remedy that ameliorates present or obviates the risk of future 'imminent' harms, not a remedy that compensates for past cleanup efforts.").
[15] *Id.* (citing *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994)).
[16] *See Meghrig*, 516 U.S. at 482, 486; *Sea Lion, Inc. v. Wall Chem. Corp.*, 974 F. Supp. 589, 594 (S.D. Tex. 1996); *see generally United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 230 (3d Cir. 2005).

indicating that there is no substantial endangerment. In January 2009, AISLIC's environmental consultant, Titan Engineering, prepared an Amended Response Action Plan identifying "stable to declining groundwater concentrations" and proposing the use of a Plume Management Zone ("PMZ").[17] Titan concluded that contamination at the 500 Property would not affect groundwater quality, would not likely pose a risk to human health, and would have little future impact on the immediate environment.[18] The Texas Commission on Environmental Quality approved the use of a PMZ, on February 20, 2009, suggesting that there was no imminent and substantial endangerment at the 500 Property. However, the same Titan report noted that a sampling of groundwater, taken on or about October 29, 2008, showed chemical of concern ("COC") contamination levels in several wells in excess of the TCEQ's Protective Contamination Levels ("PCLs").[19] Titan further noted that the "affected property has been impacted by documented releases of petroleum product from multiples sites in the area" and that the upgradient 7-Eleven property "will continue to impact groundwater flowing onto the subject [500] property."[20] Titan's First Quarter 2009 Groundwater Monitoring Report showed that the hydrocarbon plume was slightly decreasing or stable, and that the plume in the areas downgradient of the 500 Property had contracted substantially over the past three years.[21]

AISLIC contends that there was an imminent threat to health or the environment at the 500 Property at the time of suit and that any improved site conditions were due to AISLIC's cleanup efforts.[22] AISLIC's expert determined that the concentration of contaminants in the

---

[17] D's App. at 13.
[18] D's App. at 32, 42. The PMZ was proposed to control human exposure to COCs by preventing future use of groundwater, and to promote plume stability so that site closure could be obtained.
[19] D's App. at 12.
[20] D's App. at 11.
[21] D's App. at 170.
[22] D's App. at 41.

groundwater exceeded the PCLs for potential (or current) potable water supplies.[23] Groundwater samples collected at the 500 Property on April 22, 2008 and February 11, 2009 show benzene and MTBE[24] concentrations above the PCLs in several monitoring wells.[25] On September 11, 2008, the TCEQ sent a fax to Titan, stating that cleanup efforts had "not been very effective in COC destruction" and asking what further remediation was anticipated.[26] 7-Eleven's consultant's report prepared for the TCEQ noted petroleum soil contamination in connection with removal of underground storage tanks at the 7-Eleven site.

The Court must determine whether conditions at the 500 Property, *at the time of suit*, May 12, 2008, posed an imminent danger to health or the environment. Defendant misses the mark by citing almost exclusively to contamination levels in early 2009.[27] From the available evidence, it appears that there were elevated levels of potentially hazardous contaminants at the 500 Property at the time of suit.

Several courts have held that exceeding state limits on contamination levels, by itself, is sufficient to create a genuine issue of material fact as to the element of imminent threat. In *K-7 Enterprises v. Jester*, landowners sought injunctive relief under RCRA for contamination caused by underground storage tanks at a gasoline service station.[28] The court noted the interest the Texas legislature had expressed in protecting groundwater, public health and welfare, and the environment.[29] The evidence of an imminent threat to health or the environment was comparably low, because the contamination had existed for thirty years, contamination levels

---

[23] P's App. at 171.
[24] Types of petroleum hydrocarbons include benzene, toluene, ethylbenzene, and methyl tertiary butyl ether ("MTBE").
[25] P's App. at 171.
[26] P's Resp. App. at 15.
[27] *See* D's Reply Br. at 3 ("No imminent and substantial endangerment *currently exists* at the Diamond Shamrock Property.") (emphasis added); *see also supra* note 17.
[28] 562 F. Supp. 2d 819 (E.D. Tex. 2007).
[29] *Id.* at 824 (citing Tex. Water Code §§ 26.401(a)(1),(2),(4)).

had stayed the same for approximately nine years, contaminant flow in the groundwater was slow, and no one was using the affected groundwater.[30] Nevertheless, since the level of contamination exceeded the Texas contamination levels, the court declined to find, as a matter of law, that there was no imminent and substantial endangerment and denied summary judgment.[31] Several courts have denied summary judgment on RCRA claims in like circumstances, looking at the broad potential harm to the environment caused by contamination.[32] Because there is a genuine issue of material fact as to whether contamination at the 500 Property presented an imminent and substantial endangerment at the time of suit, the cross-motions on the third element of Section 6972(a)(1)(B) are **DENIED**.  Therefore, Defendant's Motion for Partial Summary Judgment is **DENIED**, and Plaintiff's Motion for Partial Summary Judgment on Section 6972(a)(1)(B) is **DENIED** in part.

Plaintiff seeks summary judgment on the first and second elements of Section 6972(a)(1)(B).  The first element is whether 7-Eleven was an owner or operator of a waste treatment, storage, or disposal facility.  7-Eleven admitted in discovery that it owned and operated one or more underground storage tanks at the 7-Eleven station that contained petroleum products.[33]  7-Eleven was the only owner and operator of the tanks from approximately June 1979 to October 2008.[34]  7-Eleven further admitted that it is a person responsible for solid waste under SWDA, with respect to contamination originating from a release of petroleum products at

---

[30] *Id.* at 829.
[31] *Id.*
[32] *See, e.g.*, *Wilson v. Amoco Corp.*, 989 F. Supp. 1159, 1175-77 (D. Wyo. 1998) (finding that there was an imminent and substantial endangerment where some contaminant flowed to a river and noting the importance of protecting groundwater); *Hoxsie Real Estate Trust v. Exxon Educ. Found.*, 81 F. Supp. 2d 359, 365 (D.R.I. 2000) ("No court, however, has held that such evidence [of contamination levels in excess of state standards] is insufficient as a matter of law to establish an imminent and substantial endangerment.  This Court will not be the first to do so. . . . Groundwater, potable or not, and soil are part of the environment.").
[33] P's App. at 125.
[34] *Id.*

the 7-Eleven station.[35] The released petroleum hydrocarbons constitute "solid waste" under RCRA.[36] 7-Eleven does not refute the proof on this element, and AISLIC is entitled to judgment as a matter of law on the first element of Section 6972(a)(1)(B).

The second element is whether 7-Eleven contributed to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste. The Fifth Circuit has defined "contributing to" as meaning to "have a part or share in producing an effect."[37] In response to a request for admission, 7-Eleven admitted that a release of petroleum products occurred from their underground storage tanks, contaminating the groundwater and soil above the PCLs, and further admitted that contamination of the groundwater and soil at the 500 Property exceeded the PCLs.[38] An April 2006 letter from an environmental firm working on 7-Eleven's behalf confirms a release from underground storage tanks that caused excessive soil and groundwater contamination.[39] AISLIC's expert found that contamination migrated from the 7-Eleven station to the 500 Property.[40] 7-Eleven does not prove otherwise. Plaintiff's Motion for Partial Summary Judgment is therefore **GRANTED** as to the first and second elements of Section 6972(a)(1)(B).

II. Reimbursement under SWDA

A. Legal Standard

AISLIC seeks past and future cleanup costs under SWDA for the migration of contamination from the 7-Eleven station to the 500 Property. SWDA is the state counterpart to RCRA and the Comprehensive Environmental Response, Compensation, and Liability Act

---

[35] P's App. at 129.
[36] *See K-7 Enters.*, 562 F. Supp. 2d at 829.
[37] *See Cox*, 256 F.3d at 295.
[38] P's App. at 126-29. The Court denies 7-Eleven's objections that these requests for admission were vague, ambiguous, and confusing.
[39] P's App. at 11-17.
[40] P's App. at 171 (Mueller Decl. ¶ 9).

("CERCLA").[41]  SWDA is to be interpreted liberally to give effect to its remedial purpose.[42] Section 361.344 of SWDA provides that "[a] person who conducts a removal or remedial action that is approved by the commission [TCEQ] and is necessary to address a release or threatened release may bring suit in a district court to recover the reasonable and necessary costs of that action and other costs as the court, in its discretion, considers reasonable."[43]  In order to bring a private cost recovery claim, a plaintiff must show:  (1) the defendant is a "person responsible for solid waste" as defined in Section 361.271; (2) the TCEQ approved the plaintiff's removal or remedial action; (3) the action was necessary to address a release or attempted release of solid waste; (4) the costs of the action were reasonable and necessary; and (5) the plaintiff made reasonable attempts to notify the defendant of both the release and the plaintiff's intent to take steps to eliminate the release.[44]  SWDA allows "even liable parties who have expended remedial costs to apportion those costs among others who are also responsible for solid waste under the Act."[45]  A party who has voluntarily cleaned up its facilities is not foreclosed from seeking relief under SWDA.[46]

Defendant argues that AISLIC must prove that response costs were due to contamination migrating from the 7-Eleven property, rather than existing contamination at the 500 Property. The Texas Supreme Court discussed such a causation requirement in the context of CERCLA in *R.R. Street v. Pilgrim Enterprises, Inc.*[47]  However, "there is no causation requirement in the language of SWDA with regard to maintaining a cost-recovery action or proving that a defendant

---

[41] *See R.R. Street & Co. v. Pilgrim Enters., Inc.* 166 S.W.3d 232, 238 (Tex. 2005).
[42] *Id.* at 238.
[43] Tex. Health & Safety Code § 361.444(a).
[44] *See R.R. Street*, 166 S.W.3d at 240.
[45] *Id.* at 239.
[46] *Id.* at 240 n.6.
[47] *Id.* at 251.

is 'a person responsible for solid waste.'"[48] Although causation is relevant to apportionment of costs, it is not an element of a SWDA claim.[49] The SWDA "clearly intends to hold those responsible for hazardous waste liable for their fair share of the cleanup costs without the need to establish causation."[50]

B. Discussion

A person is responsible for solid waste if he or she "owned or operated a solid waste facility at the time of processing, storage, or disposal of any solid waste."[51] 7-Eleven operated a gasoline station which released solid waste and admitted that it is a person responsible for solid waste under Section 361.271.[52] Therefore, Plaintiff is entitled to judgment on the first element of SWDA.

A release on the 500 Property was reported to the TCEQ, which accepted Plaintiff's cleanup action, including the use of active remediation by in-situ chemical oxidation ("ISCO"), approved in December 2007, and by natural attenuation with a PMZ, approved in February 2009.[53] The TCEQ rejected 7-Eleven's assertion that it was not responsible for contamination at the 500 Property, noting that spill buckets at the 7-Eleven station were found to be leaking in June 2005.[54] By analyzing the rate at which the groundwater gradient was moving, the TCEQ concluded that the plume from the 7-Eleven property may have migrated onto the 500 Property and that "[b]oth parties are responsible for the commingled plumes."[55] Plaintiff has established the second element of SWDA, approval by the TCEQ, as a matter of law.

AISLIC's cleanup actions were necessary to address a release of petroleum. The

---

[48] *Id.* (citing Tex. Health & Safety Code § 361.271).
[49] *Id.* at 251-52.
[50] *Bonnie Blue, Inc. v. Reichenstein*, 127 S.W.3d 366, 369 (Tex. App.—Dallas 2004, no pet.).
[51] Tex. Health & Safety Code § 361.271.
[52] P's App. at 129.
[53] P's App. at 50-52.
[54] P's App. at 41.
[55] *Id.*

evidence shows that the groundwater and soil at the 500 Property were contaminated by petroleum products in excess of the TCEQ's PCLs.[56] Under Texas law, contamination alone is sufficient to show that cleanup actions were necessary.[57] Therefore, Plaintiff has satisfied the third element of SWDA.

Defendant disputes that AISLIC's cleanup costs were reasonable. A plaintiff's cleanup costs were "reasonable and necessary" if the costs were incurred in response to a threat to health or the environment and the costs were necessary to address that threat.[58] 7-Eleven argues that AISLIC knew of contamination on the 500 Property in 1994, but delayed cleanup until 2006, thereby incurring greater costs. A relatively minor incident in 1994 was evaluated by the Texas Natural Resource Conservation Commission (the predecessor to TCEQ), which determined that the incident did not warrant further investigation.[59] The TCEQ did not require a response to the contamination until 2004, at which time AISLIC began taking remedial measures to clean up the site.[60] 7-Eleven also claims that the ISCO remediation effort was not as effective as the TCEQ and AISLIC planned it to be. Nevertheless, AISLIC's response was both reasonable and necessary. The release of petroleum caused a threat to the environment, and the TCEQ approved ISCO as an appropriate response. ISCO significantly reduced contamination at the site.[61] Even 7-Eleven's expert agrees that AISLIC's response was a typical remedial action.[62] Plaintiff is entitled to judgment as a matter of law on the fourth element of SWDA.

Finally, a person seeking recovery of response costs under SWDA must "notify the

---

[56] P's App. at 171 (Mueller Decl. ¶ 9).
[57] *See R.R. Street & Co. v. Pilgrim Enters., Inc.*, 81 S.W.3d 276, 299 (Tex. App.—Houston [1st Dist.] 2001), *rev'd on other grounds*, 166 S.W.3d 232 (Tex. 2005). *See also* 30 Tex. Admin. Code. §§ 334.72, 334.74, 334.76-81 (requiring the owners and operators of underground storage tanks to report releases and follow regulatory procedures to investigate the release and begin corrective action).
[58] *See Vine Street, LLC v. Keeling*, 460 F. Supp. 2d 728, 756 (E.D. Tex. 2006).
[59] P's App. at 41.
[60] P's App. at 184-85.
[61] D's App. at 10 ("ISCO has removed a significant amount of petroleum hydrocarbons (1,050 gallons) . . . .").
[62] P's App. at 165 (Larson Dep. 53:3-8).

person against whom cost recovery is sought: (1) of the existence of the release or threatened release; and (2) that the person seeking cost recovery intended to take steps to eliminate the release or threatened release."[63]  On or about January 29, 2007, AISLIC notified 7-Eleven of the contamination and requested that 7-Eleven assist in the cleanup.[64]

Because AISLIC has established that (1) 7-Eleven is a "person responsible for solid waste" as defined in Section 361.271; (2) AISLIC conducted a removal or remedial action approved by the TCEQ; (3) the removal action was necessary to address a release or attempted release of solid waste; (4) the costs of the action were reasonable and necessary; and (5) AISLIC notified 7-Eleven, AISLIC has established 7-Eleven's liability under SWDA.  The Court **GRANTS** Plaintiff summary judgment on its SWDA claim.

   III.  Summary Judgment on 7-Eleven's Affirmative Defense

AISLIC seeks summary judgment on 7-Eleven's affirmative defense that "AISLIC made insufficient and dilatory efforts to take appropriate and cost-effective response measures for conditions alleged at the 500 property."  7-Eleven seeks a set-off for higher or unnecessary costs caused by AISLIC's alleged failure to act.  Since 7-Eleven bears the burden of proof, AISLIC may obtain summary judgment by showing that there is an absence of evidence to support 7-Eleven's defense.[65]   If AISLIC shows the absence of such evidence, 7-Eleven "must set forth specific facts showing that there is a genuine issue for trial."[66]  To create a genuine issue, the evidence "must do more than simply show that there is some metaphysical doubt as to the material facts."[67]  7-Eleven cites a letter by AISLIC's Claim Department, which notes that

---

[63] Tex. Health & Safety Code § 361.344(c); *see also R.R. Street*, 166 S.W.3d at 240.
[64] P's App. at 45.
[65] *See Celotex*, 477 U.S. at 323, 325*; Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).
[66] Fed. R. Civ. P. 56(e); *accord Anderson*, 477 U.S. at 257.
[67] *Matsushita*, 475 U.S. at 587.

underground storage tanks on the 500 Property were leaking for at least two years.[68] This release commingled with the contaminants that migrated from the 7-Eleven site, resulting in additional remediation costs.[69] Although AISLIC undertook scientific sampling and other remediation efforts,[70] there is an issue of fact as to whether it delayed in terminating leaking tanks on its own property. Plaintiff's Motion for Partial Summary Judgment on 7-Eleven's affirmative defense is **DENIED**.

*Conclusion*

For the reasons stated above, Defendant's Motion for Partial Summary Judgment is **DENIED**. Plaintiff's Motion for Partial Summary Judgment is **DENIED** in part and **GRANTED** in part. Plaintiff has established the first two elements of RCRA as a matter of law, but there is a genuine issue of material fact as to the third element, whether "solid or hazardous waste may present an imminent and substantial endangerment to human health or the environment."[71] The Court **GRANTS** Plaintiff summary judgment on its SWDA claim and **DENIES** Plaintiff summary judgment on 7-Eleven's affirmative defense.

**SO ORDERED**.

January 19, 2010.

*[signature]*
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
**NORTHERN DISTRICT OF TEXAS**

---

[68] D's App. at 455.
[69] *Id.*
[70] *See* P's App. at 183-85.
[71] 42 U.S.C. § 6972(a)(1)(B).